**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| HAMPTON ROADS SANTITATION DISTRICT, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Case No. _____ |
| NORFOLK DREDGING COMPANY, | ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Hampton Roads Sanitation District ("HRSD"), by counsel, submits the following as its Complaint against Defendant, Norfolk Dredging Complaint ("Norfolk Dredging").

### Nature of the Action

1.     In this case, HRSD seeks judgment against Norfolk Dredging to compensate HRSD for the damages it has suffered as a result of an allision caused by a dredging vessel owned and operated by Norfolk Dredging that occurred on the Albemarle-Chesapeake Canal in Chesapeake, Virginia. More specifically, on or about March 10, 2023, Norfolk Dredging's vessel the ESSEX struck a sanitary sewer line owned and operated by HRSD while it was transiting the Albemarle-Chesapeake Canal, causing severe damage to the sewer line.

2.     The damage to the sewer line was caused solely by the negligence and fault of Norfolk Dredging. HRSD seeks an award of damages in the amount of $9,542,845 .00 for the costs and expenses HRSD has incurred and will continue to incur as a result of the negligent acts of Norfolk Dredging.

1

**Parties**

3.      HRSD is a political subdivision of the Commonwealth of Virginia and is headquartered in Virginia Beach, Virginia.

4.      Norfolk Dredging is a Virginia corporation and maintains its principal place of business in Chesapeake, Virginia.

**Jurisdiction and Venue**

5.      This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

6.      Venue is proper in this District because Norfolk Dredging is deemed to reside within this District and the events underlying HRSD's claim in this case occurred within this District.

**Factual Allegations**

7.      HRSD provides regional wastewater treatment services and other services to twenty cities and counties within the Hampton Roads area.

8.      HRSD owns and operates about 500 miles of sewer lines that carry sewage from locality sewer systems to HRSD's various treatment plants.

9.      Norfolk Dredging is the owner and operator of the ESSEX, a cutter section dredge vessel equipped with a 24-inch cutterhead dredge.

10.      A cutter section dredge, such as the ESSEX, is a type of dredging vessel in which the dredging system is mounted on a floating platform. Cutter section dredges require stabilization to counteract forces generated during dredging operations.

11.      To achieve such stabilization, the ESSEX is equipped with spuds, which are large vertical pillars that can be lowered into the seabed or riverbed to firmly anchor the vessel.

12.    On or about March 10, 2023, the ESSEX, with a crew aboard employed by Norfolk Dredging, was operating near the Great Bridge Lock on the Albemarle-Chesapeake Canal in Chesapeake, Virginia.

13.    The Albemarle-Chesapeake Canal is a navigable waterway of the United States located along the Atlantic Intracoastal Waterway between the Chesapeake Bay and the Albemarle Sound.

14.    According to the U.S. Army Corps of Engineers, the Albemarle-Chesapeake Canal is maintained to a depth of 12 feet.

15.    On or about March 10, 2023, while under tow by the tug MISS JUDY, the ESSEX was approaching the Great Bridge Bridge from a west-to-east direction when one or more of the ESSEX's spuds negligently allided with a sanitary sewer line owned by HRSD that crosses the Albemarle-Chesapeake Canal in a north-south direction.

16.    The sewer line is located east of the Great Bridge Lock and west of the Great Bridge Bridge and was positioned below the mud line of the Albemarle-Chesapeake Canal.

17.    Prior to the point at which the sewer line crosses the Albemarle-Chesapeake Canal, there is a physical sign on the canal bank that states: "Pipeline Crossing Do Not Anchor or Dredge This Area."

18.    In addition, the sewer line crossing was integrated into and depicted on the National Oceanic and Atmospheric Administration's nautical charts.

19.    The allision caused by Norfolk Dredging resulted in severe damage to the sewer line and approximately 2.5 million gallons of untreated wastewater being spilled into the canal.

20.    HRSD located and isolated the section of the sewer line that was damaged and diverted the wastewater flow to stop the spill.

21.    Shortly after the allision, an underwater inspection of the damaged sewer line was conducted. The inspection revealed that the overall length of the damage to the sewer line stretches 7 feet in length. An 18-inch hole was found to be present on the west side of the sewer line, and approximately 40% of the cross-section of the sewer line had been crushed around the hole. In addition, the sewer line suffered horizontal displacement by at least 20 inches over 60 inches.

22.    The inspection also revealed that the water depth to the top of the sewer line at the break point was located deeper than the 12-foot maintained depth of the Albemarle-Chesapeake Canal.

23.    As a direct result of the allision, the sewer line was taken out of service and must be repaired or replaced at significant cost to HRSD.

**Count I:**
**<u>Negligence</u>**

24.    HRSD repeats and realleges each of the preceding allegations as if fully set forth herein.

25.    Norfolk Dredging knew or should have known that the Albemarle-Chesapeake Canal is maintained to a depth of 12 feet.

26.    Norfolk Dredging also knew or should have known of the location of sewer line based on applicable nautical charts and physical signage present in the area where the sewer line crosses the Albemarle-Chesapeake Canal.

27.    At all times relevant, Norfolk Dredging and its officers and employees were responsible for setting the depth of the spuds and assuring that they did not extend below the maintained depth of the Albemarle-Chesapeake Canal when the ESSEX was not actively engaged in dredging operations.

28.    The allision described above, and the resulting damage to the sewer line, was the sole and proximate result of the negligence of Norfolk Dredging through the failure of its officers and employees to ensure that the ESSEX's spuds were properly positioned at all times when transiting the Albemarle-Chesapeake Canal, and through such other negligent acts as may become known during the course of this litigation.

29.    The damage to the sewer line was not caused by any negligence or fault on the part of HRSD.

30.    At all relevant times, HRSD owned and operated the sewer line damaged by the ESSEX.

31.    HRSD operated the sewer line at this location pursuant to a license agreement with the United States Corps of Engineers.

32.    Thus far, HRSD has incurred damages of not less than $1,542,845 as a direct result of the damage to the sewer line caused by Norfolk Dredging's negligence.

33.     As a result of Norfolk Dredging's negligence, HRSD will incur damages in the amount of at least $8,000,000, all such sums being necessary to repair or replace the damaged sewer line.

34.    Accordingly, HRSD estimates its total compensatory damages, exclusive of costs, to be not less than $9,542,845.

WHEREFORE, HRSD prays that judgment be entered against Norfolk Dredging in the amount of not less than $9,542,845 plus costs and reasonable attorneys' fees and such other and further relief as this Honorable Court deems just.

**HAMPTON ROADS SANITATION DISTRICT**

By:  _____
Of Counsel

Terrence Graves (VSB No. 32705)
Sands Anderson PC
919 East Main Street, Suite 2300
Richmond, Virginia 23219
Phone: (804) 783-7239
Fax:    (804) 783-7291
tgraves@sandsanderson.com

6